**Thomas E. SCHERER, Plaintiff,**

v.

**GE CAPITAL CORPORATION, d/b/a Monogram Retailer Credit Services, Inc., Defendant.**

**No. Civ.A. 97–2680–GTV.**

United States District Court, D. Kansas.

July 2, 1999.

Thomas E. Scherer, Merriam, KS, pro se.

Brian J. Finucane, Elizabeth Pettigrew West, Nancy M. Leonard, Bioff, Singer & Finucane, Kansas City, MO, for GE Capital, Corporation d/b/a Monogram Retailer Credit Services, Inc., defendant.

## MEMORANDUM AND ORDER

VanBEBBER, District Judge.

Plaintiff Thomas E. Scherer brings this action, alleging that defendant GE Capital Corporation d/b/a Monogram Retailer Credit Card Services failed to reasonably accommodate his disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and discriminated against him on the basis of his gender under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* The case is before the court on defendant's motion (Doc. 37) for summary judgment. For the reasons set forth below, defendant's motion for summary judgment is granted.

### I. Summary Judgment Standards

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is "material" if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific evidence that creates a genuine issue of material fact left for trial. *Id.*

### II. Factual Background

The following facts are either uncontroverted or are based on evidence submitted in summary judgment papers viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

On February 17, 1989, plaintiff began employment as a fraud investigator at Mo-

nogram Retailer Credit Card Services (Monogram). Monogram, a subsidiary of GE Capital Corporation, provides credit card services for its client, Montgomery Ward. When he was hired, plaintiff received a copy of defendant's associate handbook, and became aware of defendant's policy providing that harassment of coworkers including offensive or degrading comments is grounds for immediate discharge.

In April 1994, plaintiff accused another employee, Toni Valdez, of cheating on her work by improperly recording account activity on her files. Plaintiff took the files to their manager, Loss Prevention Manager Cindy Brull. On April 21, 1994, Brull met with plaintiff and Valdez to discuss the files. Brull informed plaintiff that she had reviewed the files and concluded that Valdez had not acted improperly. Fraud Unit Manager Terry Berggren also reviewed the files and concluded that Valdez had not cheated on them. Despite management's determinations to the contrary, plaintiff remained convinced that Valdez had been cheating on her files.

On April 27, 1994, plaintiff made comments to another employee about reworking files and overstating accounts. Valdez and a new employee that she was training were in the same area and heard plaintiff's comments. Predictably, Valdez took offense at the comments and believed that they were directed at her. At that time, plaintiff continued to believe that Valdez was cheating on her files. Later that day, defendant disciplined plaintiff for his treatment of Valdez. Plaintiff received a "final notice" of corrective action describing plaintiff's conduct as violative of the handbook policy against harassment of coworkers. Plaintiff refused to sign the corrective action notice.

In June 1994, plaintiff requested a transfer away from his manager, Brull. Defendant denied plaintiff's transfer request. Brull told plaintiff that his request was denied pursuant to defendant's policy prohibiting transfer of any employee on disciplinary warning. Plaintiff was on disciplinary warning stemming from the incidents in April.

On June 16, 1994, Jennifer Smith Blum, an attorney acting on behalf of plaintiff, sent a letter to Kinsey, National Recovery Manager. The letter summarized—from plaintiff's perspective—the incidents that occurred in April and indicated that Brull had acted inappropriately in holding a meeting with Valdez and plaintiff without first telling plaintiff that she did not believe that Valdez had acted inappropriately. In the letter, Blum also stated:

> My client finds it increasingly difficult to work in the Loss Prevention Department because of the way in which he was treated, ... my client can no longer perform his job without suffering bouts of severe anxiety. My client ... is currently under a doctor's care in order to cope with this problem at work.

The letter then concluded by requesting that defendant remove from plaintiff's record the corrective action notice that he received in April, and "that he be provided reasonable accommodations so that he can perform his job without experiencing additional emotional distress by either: i. providing a hassle-free work environment in his current job, or ii. providing a transfer to another department at Monogram." The letter failed to indicate that plaintiff suffered from any of his alleged impairments or how such impairments limited his ability to perform the work.

Plaintiff testified in his deposition that he wanted the transfer to get away from Brull and to reduce his stress. On June 28, 1994, Human Resources Manager Marsha Mondschein responded to the letter and indicated that plaintiff's request was denied because of the corrective action notice arising from plaintiff's conduct in April.

On August 12, 1994, plaintiff met with Brull, Mondschein, Vice President of Human Resources Phil Gaetano, and National Recovery Manager Mary Kinsey. In the meeting, they discussed plaintiff's behav-

ior, and potential termination if such conduct did not cease.

On August 29, 1994, plaintiff was involved in another incident involving a client, a loss prevention manager from a Montgomery Ward store in Arizona. Plaintiff stated that the conversation was "stupid" and that he did not care if the loss prevention manager called plaintiff's supervisor. Ultimately, plaintiff hung up on the client. On September 7, 1994, defendant terminated plaintiff's employment for unprofessional behavior to a coworker and a client.

In the Pretrial Order, plaintiff claims that he suffers from bipolar disorder, obsessive-compulsive disorder, genetic tremors, and athlete's foot. Plaintiff testified in his deposition that, in 1978, he was diagnosed with bipolar disorder and that, in 1993 or 1994, he was diagnosed with obsessive compulsive disorder. Plaintiff admitted that his alleged bipolar and obsessive compulsive disorders do not substantially limit his ability to walk, see, hear, or breathe. He testified that the conditions cause him to speak too fast, affect his ability to concentrate, and affect his interpersonal communication skills. Plaintiff also testified, however, that he takes medication that generally controls the symptoms. Moreover, plaintiff testified that the conditions limit his ability to work "only for short periods of time," and did so between April and September 1994, when he became very irritable with coworkers. Although plaintiff could perform the primary functions of the job during that period, he was less productive. Plaintiff testified that he never told defendant about his disorders or the resulting limitations, and that he attempted to hide them from defendant.

Plaintiff alleges that Brull denied his request for a transfer because of his gender. Plaintiff testified that three females applied for and received disability leave in 1994. Plaintiff also testified that a male received a disability leave in 1993. Plaintiff is not aware of any males that have been denied a disability leave.

## III. Analysis

### A. Disability Discrimination

Plaintiff claims that defendant's denial of his request for a transfer constituted a failure to accommodate under the ADA. To survive summary judgment, plaintiff must initially establish a prima facie case of failure to accommodate by reassignment to a vacant position. *SeeSmith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir.1999) (setting out the five elements of the prima facie case). The first element of the prima facie case requires a showing that "[t]he employee is a disabled person within the meaning of the ADA and has made any resulting limitations from his or her disability known to the employer." *Id.* Plaintiff has failed to establish that he is disabled under the ADA and that he made the resulting limitations known to defendant.

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Initially, the court must address whether plaintiff has an impairment under the ADA. In the Pretrial Order, plaintiff alleges that he suffers from bipolar disorder, obsessive compulsive disorder, genetic tremors, and athlete's foot. The only evidence before the court relating to an impairment is plaintiff's own deposition testimony, which contains hearsay statements regarding his doctor's diagnoses and treatment of his bipolar disorder and obsessive compulsive disorder. Deposition testimony that would constitute inadmissible hearsay if the witness were testifying in court is inappropriate for summary judgment consideration. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir.1995) ("Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment.").

Plaintiff has failed to offer any competent evidence of an impairment.

■ Even if he had shown an impairment, plaintiff has failed to demonstrate that his impairment substantially limits a major life activity. "[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, —— U.S. ——, 119 S.Ct. 2139, 2146, —— L.Ed.2d —— (1999); *see also* 29 C.F.R. Pt. 1630, App. § 1630.2(j) (whether an impairment is a disability under the ADA is not based on the name or diagnosis of the impairment, but on the effect of the impairment on the plaintiff's life). An impairment "substantially limits" a major life activity if the individual is unable to perform the major life activity, or is significantly restricted in the ability to perform the major life activity compared to the general population. *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.) (citing 29 C.F.R. § 1630.2(j)(1)), *petition for cert. filed*, 67 USLW 3707 (May 05, 1999). Whether plaintiff is substantially limited depends on the nature and severity of his impairment, its expected duration, and its expected permanent or long-term impact. *Id.* (citing 29 C.F.R. § 1630.2(j)(2)).

Plaintiff argues that his condition occasionally causes him to speak too fast, limits his ability to learn because it occasionally affects his ability to concentrate, and limits his ability to work because it affects his interpersonal communication skills. Plaintiff, however, acknowledged in his deposition that he takes medications that generally control the symptoms of his alleged disorders. Moreover, plaintiff testified that his conditions limit his ability to work "only for short periods of time."

■ The corrective effects of medication must be taken into account in the "substantially limited" analysis. *Murphy v. United Parcel Serv., Inc.*, —— U.S. ——, 119 S.Ct. 2133, 2136, —— L.Ed.2d —— (1999); *see also Sutton*, —— U.S. ——, 119 S.Ct. 2139, 2146 (apparent that corrective measures must be taken into account in determining whether plaintiff is "substantially limited"). Considering the impact of plaintiff's medication, plaintiff has failed to show that his alleged impairment substantially limits his major life activities of speaking, learning, or working. Plaintiff's evidence is insufficient to establish a genuine issue of material fact that he is substantially limited in a major life activity.

■ Plaintiff has also failed to establish that he informed defendant of his alleged disability and resulting limitations, or that defendant otherwise knew of them. *See Smith*, 180 F.3d 1154, 1179. Plaintiff acknowledged in his deposition that, other than the letter from his attorney, plaintiff did not tell defendant about his disability, and actually hid his disorders from defendant. Plaintiff testified that defendant did know that he was taking medication and that he was under a doctor's care. Such evidence fails to indicate knowledge of an impairment substantially limiting a major life activity. *See Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 163–64 (5th Cir.1996) (plaintiff must establish employer's knowledge of the alleged limitations resulting from his impairment).

The letter fails to indicate that plaintiff is disabled or how he is limited, but merely suggests that plaintiff was "suffering bouts of severe anxiety" as a result of the allegedly unfair treatment of him in April 1994. Although the letter states that plaintiff was seeing a doctor, it specifically indicates that the purpose was "to cope with this problem at work." Such evidence is insufficient to show knowledge or notice of plaintiff's alleged disability and resulting limitations. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir.1999) (notice insufficient where plaintiff indicated emotional problems but never suggested that they resulted from a disability). Accordingly, summary judgement is granted on plaintiff's ADA claim.

### B. Gender Discrimination

■ Plaintiff also alleges that defendant denied his transfer request because he is a male. In a reverse discrimination case, plaintiff may invoke the *McDonnell Doug-*

*las* burden-shifting approach only if plaintiff "establish[es] background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the [historically favored.]" *Notari v. Denver Water Dept.*, 971 F.2d 585, 589 (10th Cir.1992). Here, plaintiff failed to allege or provide evidence of any background circumstances indicating reverse discrimination by defendant. Thus, the *McDonnell Douglas* burden-shifting approach is inapplicable to plaintiff's race discrimination claim.

█ Plaintiff, however, may still establish a prima facie case if he "produce[s] evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Id.* at 590. Plaintiff produced no evidence that females ever received a transfer under similar circumstances. Plaintiff's only evidence is his deposition testimony that three females received disability leave in 1994. Disability leave is not the same as a reassignment, and there is no evidence that plaintiff requested disability leave. Moreover, plaintiff acknowledged in his deposition that defendant granted another male employee's request for disability leave in 1993. Plaintiff failed to submit evidence that but for his gender, defendant would have transferred him. Conversely, defendant offered evidence that plaintiff had received a corrective action notice, and that defendant's policy prohibited transfer of individuals who had received a corrective action notice. Accordingly, summary judgment is granted on the gender discrimination claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion (Doc. 37) for summary judgment is granted.

IT IS FURTHER ORDERED that all other pending motions (Docs. 36, 61, 63, 77, 78, and 118) are denied as moot.

Copies of this order shall be mailed to plaintiff and counsel of record for defendant.

**IT IS SO ORDERED.**